UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 06-80 |
| VICTOR OMAR PELLOT | : | |
| Defendant. | : | |

FILED
OCT 2 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### PROFFER OF EVIDENCE

If this case were to go to trial, the government's evidence would establish beyond a reasonable doubt:

1. In 2005, a confidential informant ("CI") agreed to assist law enforcement with drug trafficking in the District of Columbia. The CI said he knew of individuals selling large quantities of cocaine base. On July 14, 2005, the CI stated that he knew of an individual in the Mount Pleasant area who was selling cocaine base. The individual, known to the CI as "Goya," called him and spoke to him. Goya then handed the telephone to his supplier (the defendant Victor Omar Pellot). The three men agreed to meet at the El Salvadoriano Restaurant located at 3548 14th Street, N.W., Washington, D.C., where they agreed to sell the CI 31 grams of cocaine base for $950.00. Prior to the drug transaction, the CI was searched by MPD narcotics officers and was not in possession of any illegal narcotics. The CI was then given $950.00 in pre-recorded U.S. Currency by the narcotics officers. The CI arrived in the area of the restaurant and was immediately met by Goya. After a brief conversation, Goya walked over to a Mazda 626 and engaged in a conversation with an individual in the automobile, then walked over to an individual on a bicycle (the defendant), and received a package from him. Goya then returned to the CI and gave him cocaine base and the CI gave Goya

$950.00 in pre-recorded funds. Goya and the defendant left the area. The CI turned over the cocaine base to the narcotics officers. The cocaine base was sent to the DEA Mid-Atlantic Laboratory and analyzed. The cocaine base, in the form of crack cocaine, weighed 27.8 grams and was 67% pure.

2. The CI arranged with Goya and the defendant to purchase 125 grams of cocaine base for $3,600.00. On December 22, 2005, at approximately 4:15 p.m., the CI was searched by MPD narcotic officers and was not in possession of any illegal narcotics. The CI was then given $3,600.00 in pre-recorded U.S. Currency. The CI operated a law enforcement undercover automobile which was equipped with a audio and video recording device. The CI, with narcotics officers following him, drove to the Safeway Grocery Store in the area of Georgia Avenue and Piney Branch Avenue, N.W., Washington, D.C., to meet the defendant. At approximately 5:30 p.m., the defendant arrived with an individual identified as "Goya." The defendant provided the cocaine base to Goya, who in turn handed the cocaine base to the CI. The CI gave Goya the $3,600.00, in pre-recorded funds. Goya and the CI discussed further drugs sales, and then Goya and the defendant left the area. The drug transaction was captured both on audio and video tape. The cocaine base was sent to the DEA Mid-Atlantic Laboratory and analyzed. The cocaine base, in the form of crack cocaine, weighed 123.3 grams and was 51% pure.

3. The CI had contact with the defendant and had agreed to purchase 125 grams of crack for $3,600.00. On December 30, 2005, at approximately 3:15 p.m., the CI was searched by narcotics officers and did not possess any illegal narcotics. The CI was then given $3,600.00 in pre-recorded U.S. Currency. The CI was operating an undercover automobile owned by law enforcement which was equipped with a audio and video recording device. The CI, with narcotics officers following him, drove to the Safeway grocery store in the area of Georgia Avenue and Piney Branch Avenue,

N.W., Washington, D.C., to meet the defendant. The defendant arrived and entered the vehicle the CI was operating. The defendant provided cocaine base to the CI in exchange for the $3,600.00, in pre-recorded funds. The defendant left the area. The drug transaction was captured both on audio and video tape. The cocaine base was sent to the DEA Mid-Atlantic Laboratory and analyzed. The cocaine base, in the form of crack cocaine, weighed 123.5 grams and was 63% pure.

On January 12, 2006, the CI was going to purchase a ½ kilo of cocaine base from the defendant in exchange for $15,000.00. Narcotics officers were going to arrest the defendant in the midst of the drug transaction. On January 12, 2006, at approximately 7:30 p.m., the CI was searched by narcotics officers and did not possess any illegal narcotics. The CI was then given $15,000.00 in pre-recorded U.S. Currency. The CI was operating an undercover automobile owned by law enforcement and equipped with a audio and video recording device. The CI and defendant met in the parking lot of 1331 Fort Stevens Drive, N.W. The two men exited the automobile and entered 1331 Fort Stevens Drive, Apartment #9. The defendant showed the CI a ½ kilo of cocaine base which was being held by an unknown co-conspirator of the defendant. The CI and defendant returned to the automobile operated by the CI and the CI gave a signal to police that the cocaine base was inside the apartment. The narcotics officers arrested the defendant and searched the apartment which contained the ½ kilo. Narcotics officers searched the apartment an recovered a small quantity of cocaine hydrochloride. The unknown co-conspirator had fled (evidently with the ½ kilo of cocaine base). The cocaine hydrochloride weighed .25 grams and was 89% pure.

### Limited Nature of Proffer

This proffer of evidence is not intended to constitute a complete statement of all facts known by Mr. Pellot but is a minimum statement of facts intended to provide the necessary factual predicate

8

for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for defendant's plea of guilty to the charged offense.

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

BY: _____
Anthony Scarpelli
Assistant United States Attorney

## DEFENDANT'S ACCEPTANCE

I have read the Proffer of Evidence setting forth the facts as to my guilty plea to Unlawful Possession with the Intent to Distribute 50 grams or more of a Controlled Substance (Cocaine base), in violation of 21 U.S.C. section 841 (a)(1). I have discussed this proffer fully with my attorney, Stephen Brennwald, Esquire. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 10/26/06        Victor Pellot
_____
Victor Omar Pellot
Defendant

9

## 21 U.S.C. Section 841(a)(1) & 841(b)(1)(A)(iii)

## Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base

The essential elements of this offense, each of which the government must prove beyond a reasonable doubt, are:

1. That the defendant possessed a controlled substance, namely cocaine base, and the amount of cocaine base was 50 grams or more.

2. That the defendant possessed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

3. That when the defendant possessed the controlled substance he had the specific intent to distribute it. "Distribute" means to transfer or attempt to transfer to another person. The government need not prove that the defendant received or expected to receive anything of value in return.