UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 06-80 (RMU) |
| : | |
| VICTOR OMAR PELLOT, : | |
| Defendant. : | |
| : | |

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the Pre-Sentence Report.

I.   BACKGROUND

In 2005, a confidential informant ("CI") agreed to assist law enforcement with drug trafficking in the District of Columbia. The CI said he knew of individuals selling large quantities of cocaine base in the area. On July 14, 2005, the CI identified an individual in the Mount Pleasant area who was selling cocaine base. The individual, known to the CI as "Goya," called the CI and spoke to him. Goya then handed the telephone to his supplier, the defendant Victor Omar Pellot. The three men agreed to meet at El Salvadoriano Restaurant, located at 3548 14th Street, N.W., Washington, D.C., where they agreed to sell the CI 31 grams of cocaine base for $950.00. Prior to the drug transaction, the CI was searched by Metropolitan Police Department ("MPD") narcotics officers and was not in possession of any illegal narcotics. The CI was then given $950.00 in pre-recorded U.S. Currency by the narcotics officers. The CI arrived in the area of the restaurant and was immediately met by Goya. After a brief conversation, Goya walked over to a Mazda 626 automobile and engaged in a conversation with an individual in the automobile. Goya then walked

over to an individual on a bicycle (the defendant), and received a package from him. Goya returned to the CI and gave him the package which contained the cocaine base, and the CI gave Goya the $950.00 in pre-recorded funds. Goya and the defendant left the area. The CI turned over the cocaine base to the narcotics officers. The cocaine base was sent to the DEA Mid-Atlantic Laboratory and analyzed. The cocaine base, in the form of crack cocaine, weighed 27.8 grams and was 67% pure.     The CI arranged with Goya and the defendant to purchase 125 grams of cocaine base for $3,600.00. On December 22, 2005, at approximately 4:15 p.m., the CI was searched by MPD narcotic officers and was not in possession of any illegal narcotics. The CI was then given $3,600.00 in pre-recorded U.S. Currency. The CI operated a law enforcement undercover automobile which was equipped with an audio and video recording device. The CI, with narcotics officers following him, drove to the Safeway Grocery Store in the area of Georgia Avenue and Piney Branch Avenue, N.W., Washington, D.C., to meet the defendant. At approximately 5:30 p.m., the defendant arrived with Goya. The defendant provided the cocaine base to Goya, who in turn handed the cocaine base to the CI. The CI gave Goya the $3,600.00 in pre-recorded funds. Goya and the CI discussed further drugs sales, and then Goya and the defendant left the area. The drug transaction was captured on both audio and video tape. The cocaine base was sent to the DEA Mid-Atlantic Laboratory and analyzed. The cocaine base, in the form of crack cocaine, weighed 123.3 grams and was 51% pure.

The CI had additional contact with the defendant and had agreed to purchase 125 grams of crack for $3,600.00. On December 30, 2005, at approximately 3:15 p.m., the CI was searched by narcotics officers and did not possess any illegal narcotics. The CI was then given $3,600.00 in pre-recorded U.S. Currency. The CI operated a law enforcement undercover automobile which was

equipped with an audio and video recording device. The CI, with narcotics officers following him, drove to the Safeway grocery store in the area of Georgia Avenue and Piney Branch Avenue, N.W., Washington, D.C., to meet the defendant. The defendant arrived and entered the vehicle the CI was operating. The defendant provided cocaine base to the CI in exchange for the $3,600.00 in pre-recorded funds. The defendant left the area. The drug transaction was captured on both audio and video tape. The cocaine base was sent to the DEA Mid-Atlantic Laboratory and analyzed. The cocaine base, in the form of crack cocaine, weighed 123.5 grams and was 63% pure.

On January 12, 2006, the CI arranged to purchase a ½ kilogram of cocaine base from the defendant in exchange for $15,000.00. Narcotics officers planned to arrest the defendant in the midst of the drug transaction. On January 12, 2006, at approximately 7:30 p.m., the CI was searched by narcotics officers and did not possess any illegal narcotics. The CI was then given $15,000.00 in pre-recorded U.S. Currency. The CI operated a law enforcement undercover automobile equipped with an audio and video recording device. The CI and defendant met in the parking lot of 1331 Fort Stevens Drive, N.W., Washington, D.C. The two men exited the automobile and entered 1331 Fort Stevens Drive, Apartment #9. The defendant showed the CI a ½ kilogram of cocaine base which was being held by an unidentified co-conspirator of the defendant. The CI and defendant returned to the automobile operated by the CI under the guise of retrieving the money for the drugs, and the CI gave a signal to police that the cocaine base was inside the apartment. The narcotics officers arrested the defendant and searched the apartment which contained the ½ kilogram, but only recovered a small quantity of cocaine hydrochloride. The unidentified co-conspirator had fled, evidently with the ½ kilogram of cocaine base. The cocaine hydrochloride weighed .25 grams and was 89% pure.

**II.     SENTENCING CALCULATION**

   A.    Statutory Maximum

The defendant pled guilty to a one-count information charging him with, Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(A)(iii). The maximum sentence for the charge is life imprisonment with a mandatory minimum sentence of ten years imprisonment, five years of supervised release, and a fine in the amount of $4,000,000. The defendant is eligible to be sentenced pursuant to

   B.    Guidelines Calculation

The government and defendant agree with the Guidelines calculations utilized in the Pre-Sentence Report ("PSR"), which correctly calculated the defendant's total offense level at 29. See PSR ¶ 21. The PSR also correctly calculated the defendant's criminal history as Category 1. See PSR ¶ 24. The defendant is eligible for "safety-valve" treatment pursuant to the provisions of 18 U.S.C. §3553(e) and U.S.S.G. §5C1.2. The undersigned has met with the defendant and his attorney, and members of the Metropolitan Police department. Based upon those meetings, it appears that the defendant has satisfied the criteria set forth in 18 U.S.C. §3553(e) and U.S.S.G. §5C1.2. As such, this Court is no longer bound by the mandatory minimum sentence of 120 months. Therefore, the guideline range for the defendant is correctly calculated in the PSR as 87 to 108 months incarceration. See PSR ¶ 54. For the reasons set forth, infra Section III of this Memorandum, the government respectfully recommends that the Court sentence the defendant to 87 months imprisonment.

**III.   B.    SENTENCING RECOMMENDATION.**

In determining the appropriate sentence, the Court "shall consider . . . the need for the

sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. Section 3553(a)(2)(A).  In this case, the defendant was arrested after providing an individual working with law enforcement with approximately 274.6 grams of cocaine base, on three separate occasions.  Further, at the time of the defendant's arrest, he was prepared to sell the CI a ½ kilogram of cocaine base.  The quantity of cocaine base that the defendant distributed, and was prepared to distribute, was exorbitant, and the defendant was about to add to the severe drug problem in this community.  Although it appears that the defendant has no criminal convictions for drug trafficking, the quantities that the defendant distributed, and the fact that it was over a seven month time period, establish that the defendant was not a peripheral player in the drug trade.  He was ready, willing, and able to continue to supply cocaine base to a person whom he believed was a Washington, D.C. drug dealer.

It is vital that the Court send a message to both the defendant and the community that repeated criminal acts, including distributing drugs in this community, will not be tolerated.  It is a bedrock principle in our criminal justice system that each person is responsible for his actions and, as a result, accountable for them.  The defendant is no exception.

Accordingly, the government believes that a term of incarceration of 87 months imprisonment is appropriate.

IV.	**CONCLUSION**

Wherefore, the government respectfully requests that the Court sentence the defendant pursuant to 18 U.S.C. §3553(e) and U.S.S.G. §5C1.2 to a term of incarceration of 87 months, representing the low-range of the sentencing range.

>	Respectfully submitted,
>
>	JEFFREY A. TAYLOR
>	UNITED STATES ATTORNEY
>
>
>	_____
>	ANTHONY SCARPELLI
>	Assistant United States Attorney
>	Organized Crime & Narcotic Trafficking Section
>	555 4th Street, N.W., Room 4816
>	Washington, D.C. 20530
>	(202) 353-1679

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Stephen F. Brennald, on this 20th day of December, 2006.

>	_____
>	ANTHONY SCARPELLI
>	ASSISTANT UNITED STATES ATTORNEY