UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 06-80 (RMU) |
| ) | |
| VICTOR O. PELLOT       , ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S SUPPLEMENTAL**
**MEMORANDUM IN AID OF SENTENCING**

Defendant, Victor O. Pellot, through undersigned counsel, Stephen F. Brennwald, respectfully submits this Supplemental Memorandum in aid of Sentencing. The sentencing hearing is scheduled for March 27, 2007.

**BACKGROUND**

Victor O. Pellot, whose real name is Luis Alexander Feliz,[1] is a thirty year-old[2] citizen of the Dominican Republic. He is the father of one child.. He comes from a lower-class family, and his father drank excessively. Until his arrest, Mr. Pellot was the primary means of support for his family and child.

Mr. Pellot's life in the United States until a few months before his arrest in this case was one of working long hours to support his family back in the Dominican Republic. In fact, as the PSI notes, Mr. Pellot began working in the Dominican Republic when he was just eleven years old.

---

[1] Defendant revealed to the report writer that his real name is Luis Alexander Feliz, not Victor O. Pellot. Pursuant to discussions with counsel before meeting with the probation officer, Defendant chose to provide his real name, as he did not wish to obstruct justice, but rather tell the truth. To avoid confusion, this memorandum will continue to use the name used in the PSI.

[2] Defendant's year of birth is mistakenly reported as 1967, when it is 1976.

Mr. Pellot's conduct, as noted in the Proffer, is at odds with how he has lived the rest of his life. In fact, Mr. Pellot reports that he only began selling drugs a short time before his arrest in this matter, and that he did so because of extreme financial hardship. This, of course, is hardly a valid reason. However, as in most instances of poor human behavior, it started out with one bad decision, and led to another. As he will explain to this Court in a letter, a friend suggested that Mr. Pellot could make a little extra money by delivering some drugs to another person. Mr. Pellot then began acting as a liaison between this person and several buyers, over the course of just a few months. His activities lasted only a few months, as he was incarcerated on January 12, 2006.

On March 28, 2006, a one-count information was filed against Mr. Pellot charging him with Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). In accordance with a plea agreement, the defendant pled guilty to the information on October 26, 2006.

As part of the plea agreement, the defendant acknowledged that he was accountable for 274.6 grams of cocaine base and .25 grams of cocaine hydrochloride. Mr. Pellot was to receive a 3-level reduction for Acceptance of Responsibility, pursuant to U.S.S.G. § 3E1.1(a) & (b) and the government agreed that he should be sentenced under the "Safety Valve" provision, pursuant to U.S.S.G. § 5C1.2. His adjusted base offense level, therefore, is 29, and because he has no criminal history, the guideline range would be 87 to 108 months. *See* PSI, page 3, ¶¶ 3, 4.

Mr. Pellot is seeking a sentence below the guideline range for several reasons. First, he requests a departure based on (1) his status as a deportable alien, under *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994); and (2) pursuant to information deemed relevant pursuant to 18 U.S.C.3553(a).

# ARGUMENT

**A.  This Court Should Sentence Mr. Pellot Below the Guideline Range Because Mr. Pellot's Status as a Deportable Alien Will Result in a Fortuitous Increase in the Duration of his Sentence**

Mr. Pellot is a citizen of the Dominican Republic with no legal residency in the United States.  Following his conviction in this case, Mr. Pellot becomes immediately deportable as a person having been convicted of an aggravated felony.  See 8 U.S.C. § 1227(a).

As noted below, pursuant to regulations promulgated by the Bureau of Prisons ("BOP"), Mr. Pellot will be forced to serve a much longer sentence than a similarly situated U.S. citizen because he will be ineligible for a drug treatment program or for early release to a community-confinement center (halfway-house).

**I.  If Mr. Pellot were not a deportable alien, he would be eligible for early release upon successful completion of a residential substance abuse program**

The Sentencing Reform Act directs BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  As an incentive for prisoners to participate in such programs, Congress authorized the BOP to reduce inmates' sentences upon successful completion of treatment.  18 U.S.C. § 3621(e)(2)(B).  The BOP has taken that authority to heart, allowing "eligible" graduates of residential treatment programs up to 12 months of early release.  See Drug Abuse Programs Manuel, PS 5330.10, ch. 6, p.1 (1997).[3]  As an "exercise of [its] discretion," BOP has determined that deportable aliens are ineligible for early release.  Id.

Mr. Pellot's history of alcohol abuse would make him eligible to participate in a residential substance abuse treatment program.  To qualify for participation in a residential

---

[3]     An eligible graduate will be granted the entire 12 months unless s/he has less than 12 months remaining to be served on the sentence.  Id. ch.6, p.10.

substance abuse program, an inmate must: (1) have a verifiable documented drug abuse problem, (2) have no serious mental impairment which would substantially interfere with or preclude full participation in the program; (3) sign an agreement acknowledging his/her program responsibility; and (4) must be within 36 months of release. Id. ch.5, pp.3-4.

Upon completion of such a program, Mr. Pellot would then be eligible for early release if he were a U.S. citizen. A native graduate is eligible for early release if s/he meets the following criteria: (1) s/he has been convicted of a non-violent offense, and (2) s/he has never previously been convicted of a homicide, forcible rape, robbery, aggravated assault, or child sexual abuse offense. Id. ch.6, pp.1-2. Mr. Pellot's current offense is a non-violent, drug offense and he has no prior convictions. As a result, but for his status as a deportable alien, he would be an excellent candidate for drug treatment.

Because he will be ineligible for drug-treatment, and the twelve-month early-release program, Mr. Pellot asks this Court to reduce his sentence from 87 months (the sentence that the government will recommend) to 75 months.

### II. If Mr. Pellot were not a deportable alien, he would be eligible to spend the last ten-percent of his prison term in community confinement

The Sentencing Reform Act also mandates that, "to the extent practicable," BOP "shall assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." 18 U.S.C. § 3624(c) (stating that such authority may be used "to place a prisoner in home confinement"). Pursuant to BOP policy, deportable aliens are not eligible for such placement unless they satisfy specific criteria not applicable to Mr. Pellot. *See United States v. Lopez-Salas*, 266 F.3d 842, 849 (8th Cir. 2001); *United States v. Charry Cubillos*, 91 F.3d 1342,

1344-45 (9th Cir. 1996); *Smith*, 27 F.3d at 654.  As a result, Mr. Pellot's status as a deportable alien deprives him of approximately six months of significantly less restrictive confinement at the end of his sentence.

      Given the fact that Mr. Pellot would qualify for all of the above benefits and programs, including designation to a minimum security facility, his status as a deportable alien will result in a fortuitous and significant increase in both the severity and duration of his confinement.[4]  Indeed, that increase is not only likely, but a virtual certainty.  Given the non-violent nature of Mr. Pellot's offense of conviction and the absence of any prior convictions and his genuine need and desire for substance abuse treatment, his case presents perhaps the most glaring example of how a defendant's status as a deportable alien can negatively impact the severity and duration of his sentence.  As a result, this Court should reduce Mr. Pellot's sentence by another six months, to 69 months, based on this factor.

      **B.  This Court, pursuant to a review of the factors enumerated in 18 U.S.C. 3553(a), should impose a sentence of sixty months.**

      As this Court is well aware, post-*Booker* sentencing is governed by 18 U.S.C. § 3553(a).  Under that subsection, sentencing courts must "impose a sentence sufficient but not greater than necessary to comply with the purposes [of the Sentencing Reform Act] set forth in [§ 3553(a)(2)]."  Among the factors Courts must consider under § 3553(a) are the nature and circumstances of the offense, the history and character of the defendant, the needs of the public, and the applicable Guidelines sentencing range.  § 3553(a)(1)-(2)(A)-(D), (4).  Although the requirement that sentencing courts consider § 3553(a) factors existed prior to *Booker*, in light of

---

[4] At the conclusion of the service of his sentence, due to a probable INS detainer being filed, Mr. Pellot will not be released to return to the Dominican Republic on his own, but will in all likelihood be incarcerated in an INS detention facility awaiting deportation.  Thus, further incarceration awaits Mr. Pellot after completion of his sentence.

the transformation of the Guidelines from mandatory to advisory only, "the duty imposed by section 3553(a)(2) 'to consider' numerous factors acquired a renewed significance." *United States v. Crosby*, 397 F.3d 103, 111 (2d Cir. 2005). Thus, in exercising its sentencing discretion within the parameters of the advisory Guidelines range and the goals and purposes of sentencing as reflected in § 3553(a), a sentencing judge is not constrained by the Guidelines' limitations on the factors a court may consider in determining an appropriate sentence. *See United States v. Jaber*, No. CRIM. 02-10201-NT, 2005 WL 605787, at *15 n. 21 (D. Mass. Mar. 16, 2005) (*"Booker* plainly allows courts to look carefully at [discouraged or prohibited factors under the Guidelines] and to determine to what degree they are relevant to individual cases."). After *Booker*, factors that were discouraged under the Guidelines such as age (§ 5H1.1), educational and vocational skills (§ 5H1.2), mental and emotional conditions (§ 5H1.3), drug or alcohol dependency (§ 5H1.4), employment record (§ 5H1.5), family ties and responsibilities (§ 5H1.6), as well as prohibited factors such as socio-economic status (§ 5H1.10), are now relevant considerations for the imposition of an appropriate sentence. *See United States v. Nellum*, No. 2:04-CR-30-PS, 2005 WL 300073 at *3*4 (N.D. Ind. Feb. 3, 2005) (imposing post-*Booker* sentence below advisory Guidelines range based on age, family ties, drug addiction, medical condition, and military service, among other factors); *United States v. Myers*, 353 F.Supp. 2d 1026, 1030-32 (S.D. Iowa 2005) (imposing post-*Booker* sentence below advisory Guidelines range based on family ties and education, among other factors); *United States v. Ranum*, 353 F.Supp. 2d 984, 989-91 (E.D. Wis. 2005) (imposing post-*Booker* sentence below advisory Guidelines range based on defendant's age, lack of prior record, solid employment history, health problems, and family ties and responsibilities).

In this case, Mr. Pellot submits that a sentence of 60 months is more than sufficient

punishment for the crimes he committed.

First, Mr. Pellot had never spent any time in jail before he was arrested in this case. Thus, he had never experienced, first-hand, the "correctional effect" that incarceration can have upon a human being. Receiving a sentence of five years for one's first offense, and a non-violent offense at that, is surely severe enough to serve the goals a Court must strive to achieve when sentencing a defendant (punishment, deterrence, etc...).

Second, Mr. Pellot has spent over a year in the D.C. Jail. It is common knowledge that conditions in the D.C. Jail are much more unpleasant than those in Bureau of Prisons' facilities. In fact, counsel has spoken with many defendants who have spent time in both the D.C. Jail and in BOP facilities. To a person, they all agree that D.C. Jail time is "much harder time" than BOP time. Because Mr. Pellot will have spent over 14 months in the D.C. Jail by the time he is sentenced, he will have actually experienced much more than if he had been in a "regular" prison. In other words, 14 months in the D.C. Jail, followed by 46 months in the BOP, represents more than enough punishment for Mr. Pellot's crimes.

Third, Mr. Pellot's upbringing was a harsh one where money was difficult to obtain. Despite this reality, Mr. Pellot worked hard from a very young age. He did not commit any crime until he was 28, and then was only involved in drugs for a few months. Even that resulted from extreme financial hardship. This made it much more likely (though certainly not necessary) that he would become involved in illegal activity to make ends meet.

Fourth, Mr. Pellot will spend a fair amount of time following the service of his sentence awaiting deportation in an immigration facility. This time will not count toward any sentence whatsoever. It will simply be what defendants refer to as "dead time." And while some may overlook such "details," days, weeks, and months of a person's life can never be regained, and

must not be taken away lightly. For this reason, again, a sentence of sixty months is more than appropriate in this matter.

## **CONCLUSION**

Because of the negative sentencing consequences that will result from Mr. Pellot's status as a deportable alien, this Court should reduce the guideline sentence to reflect the disparate treatment he will experience because of that status, pursuant to *United States v. Smith*, 27 F.3d 649.

Additionally, Mr. Pellot also respectfully requests this Court reduce his sentence further given the information presented in part "B" above.

Finally, Mr. Pellot asks this Court to recommend that he serve any term of imprisonment at a prison as close to Manhattan as possible, as he has at least a few family members in that area. (Since his incarceration, Mr. Pellot has not been able to see a single member of his family, and has been in a "strange" country basically all alone.)

For these reasons and any others that may appear at sentencing, Mr. Pellot respectfully urges this Court to sentence him to five years in the Bureau of Prisons, with credit for time served.

Respectfully submitted,

_____
Stephen F. Brennwald
Brennwald & Robertson, LLP
922 Pennsylvania Avenue, S.E.
Washington, D.C. 20003
(202) 544-1990

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing Supplemental Memorandum in Aid of Sentencing was sent, by ECF to Assistant U.S. Attorney Anthony Scarpelli, this 15th day of January, 2007.

                              Stephen F. Brennwald